[No. 20260.   Department Two.   March 30, 1927.]

THE STATE OF WASHINGTON, on the Relation of J. Mills, City Treasurer et al., Respondents, v. JOHN R. McKAY, County Treasurer, Appellant.[1]

[1] TAXATION (231)—DISPOSITION OF TAXES COLLECTED—BETWEEN CITY AND COUNTY. Under Rem. Comp. Stat., § 6413, authorizing a levy of four mills for the general road and bridge fund, and requiring fifteen per cent of the levy collected in any city to be expended within such city, it cannot be asserted by the county commissioners that a four mill levy for the year 1925 was to take care of three and one-half mills of warrants issued against the fund for emergency work performed in 1924, and that the other half mill was for general work in 1925; and fifteen percent due a city must be computed on the total four mill levy; notwithstanding the budget law of Rem. 1923 Supplement, § 3997-6, relating to emergency expenditures, intended to put the county on a cash basis and requiring emergency expenditures to be met out of the fund raised for the next year.

Appeal from a judgment of the superior court for Snohomish county, Alston, J., entered March 25, 1926, denying an application for a writ of mandamus. Affirmed.

C. T. Roscoe and John C. Richards, for appellant.

O. Duncan Anderson and J. W. Dootson, for respondents.

¹Reported in 254 Pac. 847.

Askren, J.—This action was brought by the city of Everett, a municipal corporation, and its treasurer as plaintiffs, to compel the defendant as county treasurer of Snohomish county to remit the sum of $6,416.17 alleged to be due the city as its share of the taxes collected for the year 1925 for the general road and bridge fund. From a decision adverse to the defendant, he has appealed.

The facts are not in controversy, and may be briefly stated as follows:

[1] The county commissioners of Snohomish county in 1924 made a levy for the general road and bridge fund for 1925 of four mills. Approximately three and one half mills of this levy was to take care of warrants issued against the fund for emergency work performed in 1924. The other half mill was to be used for general work during 1925.

The statute providing for the levy provides as follows:

"For the purpose of raising revenue for the construction, maintenance and repair of county roads, bridges and wharves the board of county commissioners shall annually at the time of making the levy for general county purposes make additional levies as follows:

"(a) A tax of not more than four mills on the dollar on all taxable property in the county, which tax shall be kept in a fund known as the 'General Road and Bridge Fund', and shall be kept separate and distinct from any other funds of the county.

"(b) A tax of not more than ten mills on the dollar on all taxable property in each road district established by the board, which tax shall be kept separate and distinct from other funds of the county in a fund for each road district known as 'Road District No... county': Provided, that the county treasurer of each county shall remit to the city or town treasurer of each incorporated city and town within such county, fifteen

per cent of all money collected for the general road and bridge fund in such city or town, and said moneys so remitted shall be expended by the corporate authorities of such city or town on roads and bridges within said city or town connecting with roads leading out into the country known or designated as county roads." Rem. Comp. Stat., § 6413 [P. C. § 6051].

The county treasurer contends that funds collected from the half mill represented the only money collected for the general road and bridge fund, and that fifteen per cent of this amount is all the city is entitled to. On the other hand, the city maintains that the whole fund collected from the four mill levy was collected for the road and bridge fund and that it should receive fifteen per cent of the total.

It must be apparent at the outset that the total levy of four mills was made to secure funds which, when collected, were paid into the general road and bridge fund. When paid in, approximately three and one-half mills thereof had to be used to pay warrants already issued against the fund, and only one-half mill was left to pay general work during the current year. But whether the money so collected has been partly or wholly expended before it has been levied does not alter the fact that it is collected for the general road and bridge fund. The authority for the issuance of the warrants against this fund is found in section 6, chapter 164, p. 530, Session Laws of 1923, known as the county budget law, a portion of which we quote:

"All emergency expenditures shall be paid for by the issuance of emergency warrants which shall be paid from any moneys on hand in the county treasury in the fund properly chargeable with such expenditures and the county treasurer is hereby authorized and directed to pay such warrants out of any moneys in the treasury in such fund. If at any time there shall

be insufficient monies on hand in the treasury to pay any of such warrants, then such warrants shall be registered, bear interest and be called in the manner provided by law for other county warrants.

"The county auditor shall include in the annual budget to be submitted to the county commissioners the total amount of emergency warrants issued during the preceding fiscal year and the county commissioners shall include in their tax levies a levy sufficient to raise an amount equal to the total of such warrants." [Rem. 1923 Sup., § 3997-6.]

Section 9 of the same chapter provides:

"This act shall not be construed to create any new fund or funds." [Rem. 1923 Sup., § 3997-9.]

One of the purposes of the budget was to prevent the expenditure of county funds before collected, or, in other words, to put the county on a cash basis; to allow expenditures only in cases of emergency, and to require the emergency expenditures to be met out of the fund raised for the next year. Now let us suppose there was no provision of law preventing expenditures before the tax was levied, nor requirement of emergencies. Would the fact that the county levied a four-mill tax, and when the funds were collected paid out of it the past due bills, in any wise change the character of the fund? We think not. And since the budget law merely provides under what circumstances improvements may be made before the cash is in the county treasury, and provides that it shall be paid out as soon as collected, and in express words "creates no new fund", the conclusion seems unescapable that the four-mill levy was made for the general road and bridge fund for the year 1925, and that it is a matter of no moment in this action whether by permission of statute the county had drawn warrants against it before the cash was in the treasurer's hands.

o

The trial court was right in holding that the fifteen per cent should be computed on the total of the four-mill levy.

Other questions are raised, but we think do not require any discussion. Affirmed.

BRIDGES, TOLMAN, and PARKER, JJ., concur.